L. M. SCOTT and wife v. J. H. QUEEN and wife, et als.

*Estoppel—Guardian and Ward—Correction of a Deed.*

1. A guardian invested the funds of her two wards in land, taking the deed in her own name. The wards, upon a settlement, took a deed for equal portions of the land from the guardian, and gave her a release. More was due to one ward than to the other. *It was held,* that the ward to whom the larger sum was due, was not estopped by the release, from having the deed corrected, so that it should convey to her the proportion of the land, which the amount due her, bore to the amount due the other ward.

2. In such case, as the guardian is not interested, a mutual mistake on her part need not be shown in order to have the deed corrected.

CIVIL ACTION, tried before *Avery, Judge,* at Fall Term, 1885, of the Superior Court of BURKE county.

The facts appear in the opinion.

There was a judgment for the defendants, and the plaintiffs appealed.

*Mr. C. M. Busbee,* for the plaintiffs.
No counsel for the defendants.

SMITH, C. J.   Mary McElrath, mother of the *feme* defendant, the *feme* plaintiff, and J. J. McElrath, was duly appointed guardian to the two last named, and as such, came into possession of the sum of eight hundred and eighty dollars, their joint trust estate, which she used in the purchase of the lands described

in the complaint, and caused the title to be made to her.   Her
son J. J. McElrath, died intestate, in 1863, without having a
settlement with his guardian, or receiving his portion of the
trust estate, leaving his two surviving sisters, his distributees
and heirs-at-law.   The said Mary, in closing her administration
of the trust estate, and to obtain her discharge from liability
therefor, on April 22nd, 1859, executed to her two daughters, a
deed for said lands, and took from them and their husbands an
acquittance, which two instruments are as follows:

"This deed, made this 22nd day of April, 1859, by Mary
McElrath, of Burke county, State of North Carolina, to her two
daughters, Margaret Queen and Victoria C. Scott, of Burke
county, and State of North Carolina, witnesseth, that the said
Mary McElrath, who was· formerly the guardian of the said
Margaret Queen and Victoria C. Scott, in consideration of the
sum of eight hundred and eighty dollars of her wards' money,
received and paid for the lands hereinafter described, and further
other sums of money received by her as guardian of her said
daughters, and which is now released by them, the sum of five
dollars now paid by the said Margaret and Victoria C., the
receipt of which is hereby acknowledged, hath bargained and
sold, and by the presents do bargain, sell and convey, to the said
Margaret Queen, wife of Henderson Queen, and Victoria C.
Scott, wife of Lucius Scott, and their heirs, several tracts of
land in Burke county, State of North Carolina, adjoining the
lands of John McElrath, Sr., and the heirs-at-law of the late
Robert McElrath and others." (Description of the tracts omit-
ted).   "To have and to hold the aforesaid tract of land, and all
the privileges and appurtenances thereto belonging, to the said
Margaret Queen, wife of Henderson Queen, and Victoria C.
Scott, wife of Lucius M. Scott, and their heirs and assigns, to
them and their only use and behoof, and the said Mary McElrath,
doth covenant that she is seized of said premises in fee, and has
the power to convey the same in fee simple; that the same are
free from incumbrances, and that she will warrant and defend
the said title to the same, against the claims of all persons what_

soever. In testimony whereof, the said Mary McElrath has hereunto set her hand and seal the day and year above written."

The acquittance was as follows :

"This receipt witnesseth, that whereas, Mary McElrath was duly appointed guardian of her two daughters, Margaret and Victoria C. McElrath, and as guardian, received into her hands various sums of money due them from their father's and grandfather's estate, and from Edward J. Erwin, late Clerk and Master of the Court of Equity for Burke county, the proceeds of certain lands, sold under a decree of said Court, as the property of the heirs of Robert McElrath, for partition, which was due the said Margaret and Victoria, as two of the heirs and tenants in common ; and whereas, the said Mary McElrath purchased at the sale of said land, two of said tracts, and afterwards another part of a tract thus sold from the estate of Robert J. McElrath, and invested the money of her said wards in said lands, and took the conveyance to herself, and whereas, the said Margaret has arrived at the age of twenty-one years, and has married Henderson Queen, and the said Victoria C. has attained the age of twenty-one, and has likewise married Lucius M. Scott; and whereas, on the settlement of the said Mary McElrath's guardian account with her said wards, the said Mary and her said daughters and their said husbands, have settled and adjusted all claims which they or either of them may have had against said Mary McElrath, guardian as aforesaid. And the said Mary McElrath, in consideration of the same, and inasmuch as her children's money was invested in said lands, has this day conveyed the said land to them and their heirs in fee simple. We therefore hereby release and relinquish all claims and demands, we, or either of us have against the said Mary McElrath, by reason of her said guardianship. Given under our hands and seals this 22nd day of April, 1869.

VICTORIA SCOTT,     [Seal.]
LUCIUS M. SCOTT,    [Seal.]
MARGARET QUEEN,  [Seal.]
J. H. QUEEN,            [Seal.]"

The complaint alleges that the conveyance was put in its present form, under an erroneous belief of the guardian, that her daughters had an equal share in the trust fund, whereas the *feme* defendant had none until her brother's death, and then, dividing his moiety equally between his sisters, she succeeded to one-fourth only of the common fund, while the *feme* plaintiff had her original moiety increased to three-fourths, and that it was the guardian's intention to convey the estate in the lands in like proportions, and thereby discharge her liabilities to each. So she states in her answer, but is unable to explain how she came to mistake her relations in this respect towards them.

It is not averred in the complaint that the mistake was mutual, or that the instrument itself was not put in the form intended and understood by all; but that the grantor, under a misapprehension of her own financial obligations, made the deed to the two daughters for equal interests. It seems to have been an arrangement originating with her, and carried out with full deliberation and care, and the alleged mistake was discovered in 1871. The long delay in bringing the action—some twelve years—is accounted for and explained, by the fact that a compromise (verbal, we understand), was effected, and a divisional line agreed on and run, under which each has been put in possession of her part, and had the use of it since, from which the defendants have recently departed, refusing to recognize it.

There is no averment nor intimation that the misapprehension was brought about by any word or act of the defendants Queen and wife, or of either, and that the entire transaction does not effectuate the common purpose, as then understood by all.

The action has for its object the reformation of the deed, so that the estate in the lands shall vest, three-fourth parts in the *feme* plaintiff, and one-fourth part in the *feme* defendant Margaret, and then for a partition in this proportion between the tenants. The Court submitted issues made in the pleadings to the jury, in response to which they find that the lands in dispute were purchased by the guardian with the trust funds be-

30

longing to her wards Victoria C. and J. J. McElrath, and held by them in equal shares. The Court ruled that the plaintiffs were estopped by the release, and gave judgment against the plaintiffs, from which they appeal and present that ruling for review.

The substantial controversy is between the two sisters, grantees, and the reformation of the deed is demanded to readjust their respective interests in the estate conveyed. It is a matter of indifference to the grantor, whether the instrument remain in its present form, or be reformed, since however the litigating parties may be affected, her estate in either case is divested and gone. It would seem therefore, not to be so important to ascertain whether she made the alleged mistake as to the conveyance, as it is to ascertain whether there was a common mistake among the grantees taking under the deed, so as to make it inequitable for the one to retain more of the fruits of the invested trust funds, than her proper share therein. The action must then be regarded as prosecuted, not so much to rectify the deed, as to compel the adjustment of equities between the beneficiaries receiving the estate. It is unnecessary to invoke the aid of an estoppel, since it is not proposed to impeach the settlement and release, and re-assert a discharged liability resting upon the mother previously, but to re-arrange the interests acquired in the land, upon the basis of their equitable claims upon the funds invested in its purchase. The recitals in the instruments, clearly indicate an intent to substitute the land in place of the funds, as the property to whom those funds belong, and according to their several shares and interests therein. In other words, the mother voluntarily undertakes to do what the daughters, following their moneys into the investment, instead of enforcing a personal obligation, could have compelled the trustee to do, and in such case, their relative interests would be unchanged. The deed upon its face, manifests, in its erroneous recital of facts, and in its entire scope, a purpose to transfer to the land, the claims which each had to the moneys thus used, and in the same relative pro-

portion to each. The rectification of the deed in this particular, does not in any wise disturb the settlement of both with their mother, or re-open any controversy with her about her administration of the trust estates. As to her, what has been done, remains intact and final. There is error in the ruling and in the judgment rendered, for which there must be a new trial, and it is so ordered. Let this be certified.

Error.                                      Reversed.